IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH BREELAND,** | : | Civil No. 3:11-CV-1415 |
| | : | |
| **Plaintiff,** | : | |
| | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| | : | |
| **DR. DOLL, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

# REPORT AND RECOMMENDATION

## I.     Statement of Facts and of the Case

The plaintiff, a prisoner housed in the State Correctional Institution (SCI) Smithfield, who is proceeding *pro se*, first commenced this action by filing a complaint on August 1, 2011. (Doc. 1)  Breeland's complaint named three defendants: Dr. Doll, Nurse Mary, and Captain Myers, and alleged that these prison medical and correctional staff violated his Eighth Amendment right to be free from cruel and unusual punishment by displaying deliberate indifference to his serious medical needs.

Breeland's complaint then went on to assert that he suffered from a hernia in December of 2010. (Id.)  With respect to Dr. Doll the complaint simply alleges that

on December 28, 2010, Breeland's "hernia protruded through [his] abdominal wall.' According to the complaint, Breeland was promptly "placed in the infirmary," and was seen by Dr. Doll, who issued an abdominal brace to Breeland on December 29, 2010, the day after this incident. (Id.)  Other than describing this prompt, and appropriate, medical care Breeland's complaint alleges no other facts relating to Dr. Doll.

Breeland's complaint goes on to name two other defendants–Captain Myers and Nurse Mary, and levels more substantial allegations against these defendants, asserting that Captain Myers unjustifiably confiscated Breeland's abdominal brace on April 29, 2011, imperiling Breeland's health, and that Nurse Mary ignored Breeland's complaints of pain, and refused him proper treatment on May 14, 2011, when he suffered from a renewed episode of intestinal strangulation due to this hernia. (Id.)

Because these allegations against Captain Myers and Nurse Mary stated colorable claims, we granted Breeland's motion to proceed *in forma pauperis*, and ordered his complaint served.  However, because we find that Breeland's allegations with respect to Dr. Doll, in their current form, fail to state a claim upon which relief can be granted it is recommended that this defendant be dismissed from this lawsuit.

## II. Discussion

### A. Screening of *Pro Se* Prisoner Complaints–Standard of Review

This Court has a continuing statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

4

alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. Breeland's Complaint Fails to State a Claim Against One Defendant, Dr. Doll

Judged against these legal benchmarks, Breeland's complaint against Dr. Doll, in its current form, fails to state a claim upon which relief can be granted. Breeland's complaint names a prison physician, Dr. Doll, as a defendant and appears to be articulating an Eighth Amendment claim of deliberate indifference to serious medical needs. However, as to this particular defendant, the only facts alleged by Breeland are that he suffered hernia complications on December 28, 2010, was promptly housed in the infirmary, was seen by Dr. Doll, and received appropriate care in the form of an abdominal brace ordered by the doctor on December 29, 2010, the day after he experienced complications due to this hernia.

In our view, these spare factual assertions are insufficient to state an Eighth Amendment claim against this physician in a prison medical context. Breeland faces an exacting burden in advancing this Eighth Amendment claim against a prison health care provider. To sustain such a claim, Breeland must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,

7

> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in a prison setting, Breeland is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of

8

resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000. Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference.". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir.2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996). Therefore, where a

9

dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted). Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x at 197-198 (citations omitted).

Given this exacting standard, we find that Breeland's complaint, which appears to describe prompt, and appropriate, medical care provided to the plaintiff by Dr.

Doll in December of 2010, simply does not state a constitutional claim against this defendant. Instead, the complaint appears to simply describe a dispute between an inmate and medical professionals concerning which of several available treatments to use in treating a specific medical problem, a medical dispute that simply does not rise to the level of a constitutional infraction involving deliberate indifference to a serious medical need. See e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same).

Furthermore, Breeland may not maintain this claim against Dr. Doll based upon a speculative, and unarticulated, theory that the doctor may have in some fashion supervised Nurse Mary, the only other medical defendant named in this complaint. Indeed, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only

11

follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

> In particular, with respect to prison supervisors it is well-established that:
> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:
>
> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

In short, fairly construed, Breeland's claims against Dr. Doll, consist of inadequate factual claims of personal involvement in his treatment, coupled with a suggestion of *respondeat superior* liability, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, Dr. Doll is entitled to be dismissed from this case.

Having conducted this screening analysis and determined that Breeland's complaint is insufficeint with respect to Dr. Doll, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Mindful of the fact that *pro se* litigants should be provided every reasonable opportunity to state their claims, while our screening analysis calls for dismissal of this action against Dr. Doll in its current form, we recommend that Breeland be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint.

### III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows:

As to defendant, Dr. Doll, the plaintiff's complaint should be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of August 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
